IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARQUETTE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09-cv-1063-MEF |
| | ) | |
| SOUTHERN PAN SERVICES, | ) | (WO-DO NOT PUBLISH) |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Marquette Jones ("Jones") filed suit against his former employer Southern Pan Services ("SPS") alleging that SPS discriminated against him on the basis of race in violation of 42 U.S.C. § 1981. (Doc. # 8). This cause is before the Court on SPS's Motion for Summary Judgment (Doc. # 23), filed September 28, 2010. For the foregoing reasons, that motion (Doc. # 23) is GRANTED.

### II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights). The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. LEGAL STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56(a) is appropriate "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." A party may demonstrate the existence of or absence of a genuine dispute as to any material fact by pointing to materials in the record "including depositions, documents, electronically stored information, affidavits, or declarations, stipulations. . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those evidentiary submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings" and by its own evidentiary submissions or those on file, demonstrate that there is a genuine factual dispute for trial. *Id.* at 324. The Court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## IV. FACTS AND PROCEDURAL HISTORY

SPS is a construction company in the business of performing concrete formwork. (Doc. # 25 Ex. 1 at ¶ 2). In 2009, SPS began work as a subcontractor on a project in downtown Montgomery ("the project" or "the jobsite"). *Id.* SPS hired Jones, a black male, as a general laborer on the project on August 24, 2009. *Id.* at ¶ 7. His duties included cleaning, stacking materials, and removing formwork from the jobsite, for which he earned $8.50 per hour. (*Id.* at ¶ 10; Doc. # 27 Ex. 1, Tr. at 16). Before working at SPS, Jones was a pool manager, a stacker at Sylvest Farms, a roofer with Pierce Roofing, a mechanic in the tire and lube express department of WalMart, a security guard at Victoryland, and an inspector at a Hyundai plant. (Doc. # 27 Ex. 1, Tr. at 8–14). Jones agrees that at the time he was hired by SPS, he had no experience "doing concrete work or pouring concrete." *Id.* at 126.

On September 25, 2009, SPS terminated Jones's employment, citing a lack of work for a laborer with Jones's skill set. (Doc. # 25 Ex. 1 at ¶ 11). Jones claims, however, that his supervisor Jacob Lonberg ("Lonberg") told him he would be laid off because the company was not making any money. (Doc. # 25 Ex. 2 at 19).

On October 2, 2009, within one week from being laid off from SPS, Jones was hired by the general contractor at the same jobsite, Bailey Harris. *Id.* at 20. While working for Bailey Harris, Jones was paid $9.00 per hour to carry bricks and mud and to aid the brick masons in mixing mud. *Id.* at 21.

SPS claims that no workers were hired to fill the laborer position that Jones left

open. (Doc. # 25 Ex. 1 at ¶ 12). SPS did, however, hire several Hispanic workers around this time—Denis Leonel Hernandez ("Hernandez") and Elmer Cruz ("Cruz"), hired in August 2009 and Misael Garcia Samayoa ("Samayoa"), Marco Salazar ("Salazar"), Herber Luis Cortez ("Cortez"), Gilberto Vazquez Mejia ("Mejia"), and Ignacio Torres Marin ("Marin"), hired in October 2009. *Id.* at ¶ 17, 18. All of these men were, like Jones, hired to be general laborers. (Doc. # 27 Ex. 2, 6, 9, 13–17; Doc. # 25 Ex. 1 at ¶ 18). These men, unlike Jones, had prior experience with concrete formwork and shoring[1] and had undergone fall protection training, skills and experience which SPS required for the project after October 2009. *Id.* at ¶ 18.

Hernandez and Cruz were hired at the same time that Jones was hired, completing paperwork, orientation, and drug testing at the same time as Jones. (Doc. # 27 Ex. 1, Tr. at 115). Hernandez and Cruz continued to work for SPS after Jones was terminated. *Id.* at 41–42. Jones claims that after he began employment with Baily Harris, he could still observe the work that Hernandez and Cruz performed on the SPS jobsite. (Doc. # 27 Ex. 1, Tr. at 49). According to Jones, he "never saw Cruz and Hernandez perform any job duties that I did not or could not perform." (Doc. # 27 Ex. 5). According to Lonberg, Hernandez and Cruz were not terminated at the same time as Jones because Hernandez and Cruz had prior experience with concrete formwork and removing shoring at heights

---

[1] Shoring is a structure similar to scaffolding that supports structures during construction through a vertical formwork system. (Doc. # 25, Ex. 1 at ¶ 8). While scaffolding supports crew members and lightweight materials, SPS used shoring to support several thousand pounds of concrete on the jobsite where Jones was employed. *Id.* at ¶ 8, 9.

exceeding seventy feet. (Doc. # 25 Ex. 1 at ¶ 17). These skills, unlike the skills that Jones possessed, would be needed on the SPS jobsite after October 2009. *Id.*

SPS paid Hernandez and Cruz $8.50 per hour for their work. (Doc. # 25 Ex. 1 at ¶ 20). The others—Samayoa, Salazar, Cortez, Mejia, and Marin—were paid $9.00 per hour. *Id.* SPS assigned hourly wages based on experience level. *Id.* at ¶ 21. By February 5, 2010 SPS had terminated all of these employees. *Id.* at ¶ 26.

Jones filed this lawsuit on November 18, 2009. (Doc. # 1). He did not discuss his allegations with anyone at SPS or file a charge with the EEOC before filing the complaint in this suit. (Doc. # 25 Ex. 3).

On September 28, 2010 SPS moved for summary judgment on Jones's sole claim of discrimination. (Doc. # 23). After filing a response to that motion, Jones requested an opportunity to supplement the record with the affidavit of one of his supervisors. (Doc. # 29). That request was denied. (Doc. # 30).

## V. DISCUSSION

The sole count that Jones has included in his complaint alleges that SPS violated 42 U.S.C. § 1981 by discriminating against him on the basis of race. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Section 1981 is analyzed under the "same requirements of proof" and the "same analytical framework" as Title VII claims.

5

*Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002).[2]

Because Jones has not presented any direct evidence of race discrimination, his case is a circumstantial one, and the *McDonnell Douglas* burden shifting analysis applies. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must first establish a prima facie case of racial discrimination by demonstrating that: (1) he belongs to a racial minority; (2) that he was qualified for the position at issue; and that (3) the plaintiff was subject to differential treatment. *See id.*; *Davis v. Qualico Miscellaneous, Inc.*, 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001). The elements of a prima facie case of discrimination can be adjusted depending on the kind of discrimination alleged. Here, however, it is undisputed that Jones was a member of a protected class as an African American male. (Doc. # 24 at 7). It is also undisputed that Jones was qualified for the general laborer position for which he was hired. *Id.*

Once a plaintiff establishes a prima facie case of discrimination, thereby raising an inference that he was the subject of intentional race discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory reasons for the challenged employment action. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). Once the defendant has produced a non-discriminatory reason, the plaintiff bears the ultimate burden of demonstrating that the proffered reason is merely pretext for unlawful discrimination. *Id.*

---

[2] Unlike Title VII claims, a plaintiff may bring § 1981 claims without first exhausting administrative remedies. *Mathis v. Leggett & Platt*, 263 Fed. App'x 9, 12 (11th Cir. 2008) ("§ 1981 actions are not subject to the administrative exhaustion requirement.").

The facts that Jones alleges give rise to two different iterations of a race discrimination claim— (1) that SPS discriminated against Jones when SPS terminated Jones but retained Hernandez and Cruz (discriminatory discharge); and (2) that SPS discriminated against Jones when it hired Samayoa, Salazar, Cortez, Mejia, and Marin at an hourly rate of $9.00, $0.50 more than Jones made per hour during his employment with SPS (discriminatory compensation).  These will be discussed individually.

### A.  Jones's *prima facie* case of discriminatory discharge

In order to establish a prima facie case of discriminatory discharge, in addition to showing that he is a member of a protected class and that he is minimally qualified for the position at issue, the plaintiff must show (1) that he was discharged despite his qualification; and (2) that he was subject to differential treatment either because (a) he was replaced by someone who was not a member of his protected class or (b) a similarly situated employee who was not a member of his protected class engaged in nearly identical conduct and was not discharged.  *Davis*, 161 F. Supp. 2d at 1319.  There is no dispute that Jones was discharged despite being minimally qualified for the job.  SPS argues that Jones was terminated because he did not possess the skills that SPS required to go forward with the construction project. (Doc. # 25 Ex. 1 at ¶ 11).  Jones argues that when he was terminated, Lonberg told him that he was being laid off because "the company [was] not making any money."  Regardless, Jones has established that he was discharged for a reason unrelated to his qualifications.

As for the last element of the prima facie case—that he was subject to differential treatment—Jones has alleged both that (a) he was replaced by one or all of the Hispanic

7

workers hired in October 2009 and that (b) the similarly situated Hispanic workers Hernandez and Cruz were not discharged despite performing the same duties as Jones. Samayoa, Salazar, Cortez, Mejia, and Marin were all hired as general laborers, the position that Jones had occupied at SPS. (Doc. # 27 Ex. 2, 13–16; Doc. # 25 Ex. 1 at ¶ 18). Additionally, Samayoa, Salazar, Cortez, Mejia, and Marin are all Hispanic, and therefore none of them are members of Jones's protected class. This is sufficient to satisfy a prima facie case of discriminatory discharge.[3]

Jones can also establish a prima facie case of discriminatory discharge against SPS by establishing that similarly situated employees who were not members of Jones's protected class were not discharged despite engaging in nearly identical conduct. *See Davis*, 161 F. Supp. 2d at 1319. Hernandez and Cruz were hired as laborers at the same time as Jones. (Doc. # 27 Ex. 6, 7). They performed duties similar to the duties that Jones performed on the jobsite. (Doc. # 27 Ex. 1, Tr. at 40–41). However, Hernandez and Cruz, who are both Hispanic, were not discharged from SPS until approximately three months after Jones was discharged. (Doc. # 25 Ex. 1). Again, this is sufficient to establish a prima facie case of discriminatory discharge.

---

[3] SPS argues that the workers hired in October 2009 did not replace Jones because they were hired to do more specialized work than Jones was hired to do. However, as indicated by their applications for employment all of the men, including Jones, were hired to be laborers. Because the men hired in October were hired to fill positions with the same title as the position Jones held, SPS's argument is not persuasive.

### B. *SPS's nondiscriminatory justification for Jones's discharge*

The burden then shifts to SPS to establish a nondiscriminatory reason for discharging Jones. *Holifield*, 115 F.3d at 1564. SPS argues that it terminated Jones's employment because he did not possess the skills needed to complete the construction project. "At the time that Mr. Jones's employment was terminated, Southern Pan Services needed more skilled labor." (Doc. # 25 Ex. 1 ¶ 16). All of the men that Jones points to—Hernandez, Cruz, Samayoa, Salazar, Cortez, Mejia, and Marin—possessed specialized skills that SPS required, including experience with concrete formwork, removing shoring, and working at heights. *Id.* at 17–18. Jones does not dispute that he did not possess those specialized skills. (Doc. # 27 Ex. 1, Tr. at 126). He also possesses no information with which he can dispute SPS's contention that the Hispanic men hired between August and October 2008 did in fact possess specialized skills. *Id.* at 127.

Jones does argue that Hernandez, Cruz, Samayoa, Salazar, Cortez, Mejia, and Marin all failed to include their specialized skills on the application for employment that each man filled out. (Doc. # 27 at 5–6). However, the application did not specifically ask the men to list each kind of specialized skill, training, and work experience. The application form listed only two blanks for employment experience, and it appears that most men simply filled in these blanks with the last two jobs each held. (*See* Doc. # 27 Ex. 2 in which Jones himself listed Victoryland, a non-construction job, as his first example of employment experience). Based on the evidence presented, the Court finds that SPS has carried its burden in establishing a nondiscriminatory reason for discharging Jones.

9

### C. *Jones's burden to show pretext*

The burden then shifts back to Jones to rebut the proffered reason and establish that it is mere pretext for a discriminatory discharge. *Holifield*, 115 F.3d at 1564. Jones cannot do so. His only argument is that "[w]hether they are carpenters/skilled laborers or not, when they were hired they were put to work tearing down scaffolding, a task that Plaintiff had been doing." (Doc. # 27 at 7). In other words, Jones argues that even if Hernandez, Cruz, Samayoa, Salazar, Cortez, Mejia, and Marin were specialized laborers, they did not perform specialized work after being hired by SPS. However, the only evidence that Jones produces to support this contention is his own observations regarding what the men did on the jobsite.[4] Because Jones was re-hired by the general contractor on the jobsite, he was able to observe SPS employees during the work day. Jones contends that he only observed the men performing the same types of duties that he had performed as an employee of SPS. (Doc. # 27 Ex. 1 at 47–48).

However Jones's observations cannot prove that Hernandez, Cruz, Samayoa, Salazar, Cortez, Mejia, and Marin never performed the specialized work that SPS hired them to do. Jones has not shown that he was working the same schedule as each of the

---

[4] Jones also points out that 84.51% of the workforce on the jobsite was Hispanic. This number, while generally irrelevant to determining whether or not Jones can establish that the proffered reason for his discharge is pretextual, is also based entirely on Jones's observations of the jobsite. Jones cites his own declaration and deposition testimony to support his contention, in addition to SPS time entry records for the week after Jones's discharge. However, the employees' races are not identified on the time entry records, so the Court presumes that the data Jones cites is based on his own observations regarding the appearance and names of the individuals SPS employed. This is not sufficient to establish that SPS's reason for discharging him was pretextual.

10

men.  He has not established that he was able to observe all seven men on the jobsite during each minute of each work day.  Jones has not gathered any testimony from anyone else on the jobsite—including any statements from the other workers themselves— to corroborate his observations. Therefore, the Court finds that Jones has not carried his burden of establishing that SPS's reason for discharging Jones was pretext for race discrimination.  Accordingly, SPS's motion for summary judgment is due to be granted on this claim.

### D.  Jones's prima facie case of discriminatory compensation

In order to establish a prima facie case of compensation discrimination, a plaintiff must establish that: "(1) he belongs to a racial minority; (2) received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage." *Lee v. Mid-State Land & Timber Co., Inc.*, 285 Fed. App'x. 601, 606 (11th Cir. 2008).  As described above, Jones can establish that he belongs to a racial minority.  He can also establish that he received lower wages than other workers on the jobsite.  He made $8.50 per hour, while SPS paid Samayoa, Salazar, Cortez, Mejia, and Marin $9.00 per hour.  (Doc. # 25 Ex. 1 ¶ 20).

However, Jones cannot prove that he was qualified to receive the higher wage.  SPS supervisor Lonberg made the decision to pay Samayoa, Salazar, Cortez, Mejia, and Marin $9.00 per hour for their work based upon their skills and experience.  (Doc. # 25 Ex. 1).  Jones does not dispute that he did not possess the same skills or prior work experience.  In fact, in his response to SPS's motion for summary judgment, Jones does not address his discriminatory compensation claim at all.  He presents no argument that

he was qualified to earn the higher wage.  He therefore cannot establish a prima facie case of discriminatory compensation, and SPS's motion for summary judgment is due to be granted on these grounds.

## VI.  CONCLUSION

Consistent with the foregoing memorandum opinion, it is hereby ORDERED that:

(1) SPS's Motion for Summary Judgment (Doc. # 23) is GRANTED;

(2) Jones's claims are DISMISSED in their entirety;

(3) the pretrial hearing scheduled for February 25, 2011 and the trial scheduled for March 21, 2011 are CANCELLED.

The Court will enter a separate final judgment consistent with this Memorandum Opinion and Order.

Done this the 16th day of February, 2011.

                                          /s/ Mark E. Fuller
                                   CHIEF UNITED STATES DISTRICT JUDGE